**UNITED STATES of America, Appellee,**

v.

**Irwin A. SCHIFF, Defendant-Appellant.**

**No. 1425, Docket 86–1030.**

United States Court of Appeals,
Second Circuit.

Argued June 18, 1986.

Decided Sept. 15, 1986.

John R. Williams, New Haven, Conn. (Williams and Wise, New Haven, Conn., of counsel), for defendant-appellant.

Michael Hartmere, Asst. U.S. Atty., Dist. of Conn., New Haven, Conn. (Stanley A. Twardy, Jr., U.S. Atty., Dist. of Conn., New Haven, Conn., of counsel), for appellee.

Before MESKILL and KEARSE, Circuit Judges, and METZNER,* District Judge.

MESKILL, Circuit Judge:

Irwin A. Schiff appeals from a judgment of the United States District Court for the District of Connecticut, Dorsey, J., convicting him after a jury trial of three counts of attempted tax evasion in violation of 26 U.S.C. § 7201 (1982) and one count of willful failure to file a corporate tax return in violation of 26 U.S.C. § 7203 (1982). Schiff claims several errors in the district court's charge to the jury. We conclude that these claims are without merit and affirm the judgment of the district court.

* Honorable Charles M. Metzner, United States District Judge for the Southern District of New

## BACKGROUND

Although the trial below was lengthy, lasting from October 1 through October 25, 1985, most of the facts are uncontested. Therefore, we limit our discussion of them.

Appellant Schiff is an author and lecturer who describes himself as a "professional tax resister." J.App. at 122. The jacket of one of his books, entitled *How Anyone Can Stop Paying Income Taxes*, describes him as "an economist and constitutionalist [and] America's leading untax expert." Supp. to J.App. Schiff's brief on appeal modestly states that "[w]ith the possible exception of H. & R. Block, Irwin Schiff may well be the most well known and highly publicized speaker and writer on the income tax in America," having appeared on major radio and television programs, having been the subject of "hundreds" of newspaper and magazine articles and having authored numerous books and articles on the income tax. Br. of Defendant-Appellant at 2. Schiff does not dispute that he earned income during calendar years 1980, 1981 and 1982, that he failed to file federal income tax returns and did not pay income taxes for those years. He also does not dispute that Irwin A. Schiff, Inc., of which he was president, failed to file a tax return for its fiscal year ending in 1981.

Schiff was charged by an indictment filed April 3, 1985, with three counts of attempted tax evasion relating to income earned and taxes owed for calendar years 1980–82 and one count of willful failure to file a tax return for Irwin A. Schiff, Inc., for its fiscal year ending in 1981. 26 U.S.C. §§ 7201, 7203 (1982). The first three counts of the indictment charged that Schiff had "knowingly attempt[ed] to evade and defeat" the income tax owed by him for each of the three years in question by failing to make tax returns, failing to pay the income tax he owed and concealing and attempting to conceal his income. J.App. at 4–6.

York, sitting by designation.

Because of the lack of dispute over Schiff's failure to file tax returns or pay taxes, both the government and Schiff concentrated at trial on Schiff's criminal intent or lack of it and the question of whether he had concealed or attempted to conceal income. Schiff did not testify. The government sought to prove Schiff's evasive intent and knowledge of the tax law through his own writings, tapes of his speeches, evidence of his dealings with banks in Switzerland and the Cayman Islands and evidence that Schiff used and recommended the use of special pens with nonreproducible ink in order to thwart Internal Revenue Service attempts to photocopy financial records. The government also tried to prove Schiff's knowledge of the law by evidence of his prior experiences with the federal courts. A portion of Judge T. Emmet Clarie's jury instructions during Schiff's 1980 trial for failure to file tax returns was read to the jury, as was a portion of Judge Ellen Bree Burns' 1981 opinion in a civil case involving Schiff rejecting some of Schiff's constitutional arguments against the income tax. Schiff's defense consisted primarily of evidence of advice given to him on tax matters by various attorneys and an accountant.

After fourteen days of testimony, the case went to the jury on the afternoon of October 23, 1985. The jury asked several questions. In response to one of them during the first afternoon of deliberations, the court sent a written copy of its complete jury charge into the jury room as a court exhibit with the consent of counsel. On October 25, the jury reached a verdict of guilty on all four counts of the indictment. Schiff appeals.

## DISCUSSION

Schiff's claims on appeal are limited to asserted errors in the trial court's jury instructions. He argues that the court's instructions erroneously imposed an objective test rather than a subjective test on his good faith defense, effectively amended the indictment to permit a conviction based on uncharged conduct and permitted Schiff to be convicted by a non-unanimous jury. We discuss each claim in turn.

### 1. *Good Faith Defense*

In order to convict Schiff of attempted tax evasion in violation of 26 U.S.C. § 7201, the government had to prove that Schiff had willfully taken steps to evade or defeat his income tax obligation. "[W]illfulness in this context simply means a voluntary, intentional violation of a known legal duty." *United States v. Pomponio*, 429 U.S. 10, 12, 97 S.Ct. 22, 23, 50 L.Ed.2d 12 (1976) (per curiam); *United States v. Bishop*, 412 U.S. 346, 360, 93 S.Ct. 2008, 2017, 36 L.Ed.2d 941 (1973). In *Bishop*, the Supreme Court explained the rationale for requiring willfulness as a predicate to criminal liability for tax evasion.

> In our complex tax system, uncertainty often arises even among taxpayers who earnestly wish to follow the law. The Court has said, "It is not the purpose of the law to penalize frank difference of opinion or innocent errors made despite the exercise of reasonable care." *Spies* [*v. United States*], 317 U.S. [492,] 496, 63 S.Ct. 364, 366, 87 L.Ed. 418 [1943]. Degrees of negligence give rise in the tax system to civil penalties. The requirement of an offense committed "willfully" is not met, therefore, if a taxpayer has relied in good faith on a prior decision of this Court.... The Court's consistent interpretation of the word "willfully" to require an element of *mens rea* implements the pervasive intent of Congress to construct penalties that separate the purposeful tax violator from the well-meaning, but easily confused, mass of taxpayers.

412 U.S. at 360–61, 93 S.Ct. at 2017–18 (citations omitted). Schiff's defense at trial was that he believed in good faith that the income tax was voluntary and that he was, therefore, not required to pay the tax.

In charging the jury on the good faith defense to the element of willfulness, the district court said in part:

> In considering the Defendant's claim that in good faith he did not believe the

law required him to file returns or to pay taxes on income, the question is, whether or not he truly held such a belief; *and whether there was a basis on which he could have held such a belief.* Your determination of these questions must be made after examining all of the evidence. J.App. at 265 (emphasis added).[1] Schiff failed to object to the italicized portion of the charge when it was initially given to the jury or when it was included in the written charge that was sent into the jury room. He now argues that the italicized language was plain error because it imposed an objective rather than a subjective test of good faith. For the following reasons, we conclude that the district court's language, taken in context, did not impose an objective test and, even if it did, it was not erroneous.

 The willfulness of one accused of tax crimes may be proved by circumstantial evidence. *United States v. Schiff,* 612 F.2d 73, 77–78 (2d Cir.1979); *see United States v. MacKenzie,* 777 F.2d 811, 818 (2d Cir.1985) (defendants' conduct and educational background were evidence of their awareness that they were violating tax law). As a practical matter, such evidence is likely to be the only type available to support or rebut a good faith defense other than the word of the defendant himself. If the defendant's mere claim of good faith is not to be the end of the case, a trier of fact must evaluate the "basis" for that claim in order to determine whether the claim is genuine. The district court here was properly reminding the jury of that obligation. This portion of the charge did not, as Schiff argues, require the jury to determine objectively whether a reasonable person could have believed that the income tax was voluntary. By its terms, the charge restricted the inquiry to whether Schiff himself actually held such a belief, *i.e.,* whether his claim of such belief was credible.

Schiff's tardy complaints about the instruction to evaluate the basis for his good faith claim are weakened by timely objections he made to other portions of the charge. Schiff excepted to the court's charge on the Privacy Act, arguing that the Act "could provide *a sufficient basis* for the jury to conclude that the Defendant acted in good faith." J.App. at 285 (emphasis added). He also asserted that conclusive weight should be given to a finding of reliance on the advice of an accountant or attorney, in effect arguing that such reliance should be a sufficient basis for his good faith defense as a matter of law. Thus, Schiff recognizes, as we do, that claims of good faith cannot be evaluated in a vacuum.

Moreover, Schiff's brief on appeal points with approval to a charge quoted in a foot-

---

1. The charge on the element of willfulness was quite lengthy. The portion devoted to the good faith defense was as follows:

 If a person, in good faith, believes that he has paid all the taxes he owes, he cannot be guilty of criminal intent to evade the tax. He cannot be liable if in good faith he holds a misunderstanding of the requirements of the law or a good faith belief that his income was not taxable. The grounds on which Defendant bases his claims of good faith in a belief that his conduct was lawful may be considered in deciding whether he in fact acted in good faith, or whether he intended and willfully attempted to evade or defeat the tax. A defendant's disagreement with the law, no matter [how] earnestly held, does not constitute a defense of good faith misunderstanding or mistake. It is the duty of all citizens to obey the law whether they agree with it or not.

 The issue of intent, as to whether the Defendant willfully attempted to evade or defeat the tax, is one that you must determine from a consideration of all the evidence in the case bearing on the Defendant's state of mind.

 In deciding whether the Defendant has been proven to have attempted to evade or defeat the payment of a tax for which he was liable, that is to say whether he acted willfully, voluntarily and intentionally, you may consider all of his knowledge, the law of which he had knowledge, including any and all court decisions which came to his attention, the Internal Revenue Code, the constitution, and any legal advice which was given to him.

 In considering the Defendant's claim that in good faith he did not believe the law required him to file returns or to pay taxes on income, the question is, whether or not he truly held such a belief; and whether there was a basis on which he could have held such a belief. Your determination of these questions must be made after examining all of the evidence. J.App. at 264–65.

note to our 1979 opinion in a case involving him. The quoted charge, like the one Schiff now attacks, directed the jury to determine whether Schiff "acted in accordance with a good faith understanding of the law, *based upon, among other things,* a good faith reliance on judicial decisions of the federal courts or a good faith belief that the documents filed [by Schiff] constituted in each case an income tax return." *United States v. Schiff,* 612 F.2d at 78 n. 6 (emphasis added). There, as here, the district court recognized that an evaluation of a good faith defense requires an inquiry into its basis.

While we conclude that the "basis" instruction did not impose an objective reasonableness test on Schiff's assertion of good faith, we also conclude that even if such a test had been imposed by the instruction, that would not have been error. We recently applied an objective test of reasonableness in *United States v. Ebner,* 782 F.2d 1120, 1125 (2d Cir.1986), in rejecting a claim of good faith belief in the tax exempt status of the Life Science Church (LSC). A state court had issued a permanent injunction against the defendants in *Ebner,* holding, *inter alia,* that their claims to federal tax exempt status were invalid. *Id.* at 1124. We held that that state court "opinion clearly demonstrated that the defendants *could not reasonably believe* that the supposed tax benefits of an LSC 'ministry' existed under the law." *Id.* at 1125 (emphasis added). *See United States v. Claiborne,* 765 F.2d 784, 798 (9th Cir.1985) (government may prove willfulness by circumstantial evidence that defendant "knew or must have known" that tax returns he filed were false).

Here, as in *Ebner,* there was evidence of a court decision in a prior case involving the defendant, rejecting some of his arguments against the legality of the federal income tax. The decision here had been rendered by a federal court. As we noted in *Ebner,* such a prior decision is an "authoritative statement" on the law. 782 F.2d at 1125–26. It was thus powerful evidence that Schiff could no longer reasonably believe that his contrary view of

the law was correct. Judge Clarie's jury instructions in Schiff's 1980 trial on his failure to file income tax returns were similarly authoritative.

It is well established that the good faith defense encompasses misunderstanding of the law, not disagreement with the law. *United States v. Kraeger,* 711 F.2d 6, 7 (2d Cir.1983). The distinction is necessary to the functioning of the tax system. Without it, any taxpayer could evade tax obligations simply by stubbornly refusing to admit error despite the receipt of any number of authoritative statements of the law. At some point, such stubbornness becomes unreasonable; the line is crossed between misunderstanding and disagreement and the taxpayer can no longer successfully assert a defense of good faith.

■ In accord with our analysis above, we also reject Schiff's challenge to another portion of the charge which, he claims, exacerbated the problem created by the "basis" instruction. While charging on the fourth count of the indictment, willful failure to file a corporate tax return, the court gave the following instruction on "conscious avoidance."

In determining whether a Defendant act[ed] knowingly and willfully, you may consider, as well, whether the Defendant deliberately closed his eyes to what otherwise would have been obvious to him. A finding beyond a reasonable doubt of a conscious purpose to avoid enlightenment would permit an inference of knowledge.

Stated another way, a defendant's knowledge of a fact may be inferred from willfull [sic] blindness to the existence of that fact. You may consider whether or not the Defendant displayed a deliberate indifference or refusal to be informed in this regard. It is entirely up to you as to whether you find any deliberate closing of the eyes, and the inferences which may be drawn from any such evidence.

J.App. at 269–70. Schiff made a timely objection to this language.

We recently approved of a conscious avoidance charge in a tax context, *United States v. MacKenzie*, 777 F.2d at 818–19 & n. 2, and we have noted a wide range of cases where conscious avoidance charges are proper, *United States v. Lanza*, 790 F.2d 1015, 1021–22 (2d Cir.1986). The charge here, like the charge at issue in *MacKenzie*, referred to conscious avoidance of knowledge of "a fact," not of the law, as Schiff contends. The distinction is not as critical in this case, however, as Schiff claims.

The government correctly pointed out at oral argument that Schiff's knowledge of tax law was, itself, a *fact* to be proved as part of the government's case. *Pomponio*, 429 U.S. at 12, 97 S.Ct. at 23; *see Ebner*, 782 F.2d at 1125–26 (prior court opinion admitted into evidence to prove the fact that defendants were "on notice that their conduct was illegal"); *MacKenzie*, 777 F.2d at 818 (conduct and education of defendants supported inference of knowledge of law); *Claiborne*, 765 F.2d at 798 (defendant federal judge's own understanding of tax law was "highly relevant" to his good faith defense). Our analysis above indicates that there is a point at which a defendant can no longer claim a lack of knowledge in good faith. The conscious avoidance instruction permits a jury, on the basis of all of the evidence, to decide that the point at which the defendant is on notice of the law, whether he subjectively agrees with it or not, has been reached. As we have noted above, continued disagreement with the law after this point is not a defense. *See Kraeger*, 711 F.2d at 7.

To the extent that *United States v. Aitken*, 755 F.2d 188, 193 (1st Cir.1985), might be read to establish a subjective good faith defense which would prevail despite a finding that the defendant was fully on notice of the law, we decline to follow it. We do not read *Aitken* as going that far, however. In our view, *Aitken* only restates the rule that a good faith misunderstanding of tax law is a defense, while disagreement with the law, no matter how passionately advocated, is not. *See id.* at 191–93 & n. 4.

## 2. *Amendment of Indictment*

Schiff next attacks an instruction given by the district court in response to a jury question. The first three counts of Schiff's indictment had charged that Schiff:

> did willfully and knowingly attempt to evade and defeat the said income tax due and owing by him to the United States of America for the said calendar year by failing to make such income tax return to the said Internal Revenue Service, *and* by failing to pay to the Internal Revenue Service said income tax, *and* by concealing and attempting to conceal from all proper officers of the United States of America his true and correct taxable income.

J.App. at 4–5 (emphasis added). The jury's question was whether it must find "concealing and attempting to conceal" proved beyond a reasonable doubt.

Rather than just answering "no" as urged by the government or "yes" as urged by Schiff, the court responded in some detail. First, after reading the pertinent part of the indictment, the court stated that one element of attempted tax evasion was "that defendant willfully attempted, *in some manner,* to evade or defeat such tax, with the specific intent to defraud the government of such tax." J.App. at 433 (emphasis added). Then, the court continued:

> In the indictment there are three ways in which the government has made the charge that there was a willful attempt in some manner to evade or defeat the tax. What you must be concerned with is whether the Government has proven to your satisfaction beyond a reasonable doubt each of the three elements as I have charged them to you. Therefore, the answer to your question is not really either yes or no in the sense that if the evasion and the only act of evading that you find proven was by the concealing or attempting to conceal, then the answer to the question is, yes. But if you find that some other manner which is the third

element of the proof necessary is something, and this again is for you to decide if it happens to be the case, is an act or omission other than concealment, but which nonetheless constitutes a willful attempt on the part of the defendant to evade or defeat the tax, then the answer to the question is, no.

J.App. at 433–34. The court cautioned the jury again that the government had "specified three ways" in which Schiff had allegedly attempted to evade the income tax. J.App. at 434–35. Finally, it repeated a portion of its earlier charge on the elements of attempted tax evasion.

Schiff argues here, as he did below, that this language, in effect, amended the indictment against him so as to permit him " 'to be convicted in some manner other than that which he was charged.' " Br. of Defendant-Appellant at 14 (quoting J.App. at 437). He concedes that the court's treatment of the italicized "and's" as "or's"—in permitting a conviction based on proof of any one of the three methods of attempted tax evasion—was "probably" not reversible error. Br. of Defendant-Appellant at 14. He argues, however, that the court's repeated use of "in some manner" or equivalent language in combination with the change from "and" to "or" constituted fatal error because it permitted the jury to base a conviction for attempted tax evasion on conduct other than that charged in the indictment. This argument is without merit.

"[I]t appears settled that indictments worded in the conjunctive, charging violations of statutes worded in the disjunctive, can be supported by proof of either of the conjoined means of violating the act." *United States v. Cioffi*, 487 F.2d 492, 499 (2d Cir.1973). Thus, the court's effective changing of "and" to "or" here was not error.

The use of the "in some manner" language to explain an element of the crime of attempted tax evasion was not improper in the context of the total charge. The court had used similar language many times in its earlier oral and written charges without objection. In both the oral and the written charges, the court cautioned that the jury must "determine the guilt or innocence of the defendant from the evidence in this case solely in relation to the conduct or offenses charged in the indictment." J.App. at 363, 278. Then, in the challenged instruction, it noted twice that only three methods of attempted tax evasion were specified in the indictment. Taken in context then, the "in some manner" language referred to one or more of the three alleged methods of evasion. These instructions were adequate to insure that the jury would properly restrict its deliberations to those three alleged methods of evasion.

This case is thus unlike *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), upon which Schiff relies. In *Stirone*, the trial court permitted the admission of evidence of an uncharged act and then permitted the jury to rely on that evidence in determining guilt. *Id.* at 214, 80 S.Ct. at 271. Here, Schiff does not argue that evidence of uncharged acts was admitted and the trial court on several occasions reminded the jury of its duty to determine Schiff's guilt or innocence only on the basis of acts specified in the indictment.

### 3. *Unanimous Jury*

■■■ It is true, as Schiff argues, that a jury must reach a unanimous verdict as to the factual basis for a conviction, *United States v. Peterson*, 768 F.2d 64, 66–67 (2d Cir.1985); *United States v. Gipson*, 553 F.2d 453, 456–59 (5th Cir.1977); *United States v. Natelli*, 527 F.2d 311, 324–25 (2d Cir.1975), *cert. denied*, 425 U.S. 934, 96 S.Ct. 1663, 48 L.Ed.2d 175 (1976), at least insofar as that basis can be broken down into "distinct conceptual groupings" of facts, *Peterson*, 768 F.2d at 67; *Gipson*, 553 F.2d at 458. A general instruction on unanimity is sufficient to insure that such a unanimous verdict is reached, *Peterson*, 768 F.2d at 67–68; *United States v. Murray*, 618 F.2d 892, 898–99 (2d Cir.1980); *Natelli*, 527 F.2d at 325, except in cases where the complexity of the evidence or

other factors create a genuine danger of jury confusion, *United States v. Payseno*, 782 F.2d 832, 835–37 (9th Cir.1986). A conviction based on such a verdict will stand if there was sufficient evidence with respect to each "specification" in the challenged count of the indictment. *Peterson*, 768 F.2d at 67; *Natelli*, 527 F.2d at 325.

Here, the trial court, in effect, gave a general unanimity charge three times: first in its oral charge, a second time in the written version of the charge that was sent into the jury room and a third time in its "modified Allen charge." J.App. at 418, 425. The court denied Schiff's request for a specific charge on the requirement of unanimity as to the factual basis for the verdict. On this record, "[w]e do not say it would be wrong for a trial judge to give the charge requested, but it [was] not error to refuse it." *Natelli*, 527 F.2d at 325 (footnote omitted).

█ The first three counts of the indictment charged Schiff with attempting to "evade and defeat" the income tax he owed by failing to make income tax returns, failing to pay income tax and concealing and attempting to conceal his income. Even if each of these three specifications is conceptually distinct from the other two so that unanimity concerns arise, the district court was neither faced with the complexity that created the need for a special instruction in *Payseno* nor the insufficiency of evidence that caused the reversal in *Natelli*. The specifications in *Payseno* involved separate acts of extortion carried out by various individuals, acts directed at different victims at different times and in widely separated locations. Here, the alleged acts were closely interrelated and carried out by a single individual. Schiff concedes that intent and state of mind were the primary disputed issues. He concedes that he neither filed tax returns nor paid taxes and there was ample evidence to support a finding that he concealed or attempted to conceal his income. On these facts, the oft-repeated general unanimity charge was sufficient to insure a valid, unanimous verdict.

We have rejected the notion that the district court's instructions in response to the jury question about the need for proof of "concealing or attempting to conceal" had the effect of opening the door to findings of guilt based on uncharged acts. Accordingly, we also reject Schiff's argument that jurors after receiving those instructions could have reached a non-unanimous verdict on the basis of such uncharged acts.

### CONCLUSION

We have carefully considered all of Schiff's arguments on appeal and find them to be without merit. We affirm the judgment of the district court.